NEW YORK STATE NATIONAL OR-
GANIZATION FOR WOMEN, New
York Chapter of the National Orga-
nization for Women, Westchester
County Chapter of the National Or-
ganization for Women, on behalf of
themselves, their members, and all

others similarly situated, and Clarice Seegars, Bernadette Thomas, Dellie Britt, and Jane Doe, as Administratrix, on behalf of themselves, and all others similarly situated, Plaintiffs–Intervenors,

v.

George W. PATAKI, individually and as Governor of the State of New York, and Edward Mercado, individually and as Commissioner of the Division of Human Rights of the Executive Department of New York State, Defendants.

No. 93 Civ. 7146(RLC).

United States District Court, S.D. New York.

Oct. 17, 2002.

Raff & Becker, LLP, New York City, Robert L. Becker, David Raff, of counsel, for Plaintiffs–Intervenors.

Eliot Spitzer, Attorney General of the State of New York, New York City, June Duffy, Assistant Attorney General, of counsel, for Defendants.

Joel Berger, Abby Oshinsky, New York City, Joel Berger, of counsel, for Plaintiff Class–Member.

Robert L. Doan, Acting General Counsel for the New York City, Housing Authority, New York City, Mario G. Frangiose, Donna M. Murphy, of counsel, for Defendant.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiffs New York State National Organization for Women, et al., move for curative notice relief to aid in further enforcement of a permanent injunction entered by this court in its decision *N.Y. Nat'l Org. for Women v. Pataki*, 189 F.R.D. 286 (S.D.N.Y.1999) (Carter, J.). Defendants George W. Pataki, et al., cross-move to dismiss plaintiffs' cause of action in its entirety. Plaintiff Class–Member Abby Oshinsky moves for an order reinstating her claims of discrimination and harassment before the New York State Division of Human Rights. The New York City Housing Authority moves to intervene in this litigation and oppose Oshinsky's motion for relief. For the reasons set forth below, each of these motions is denied.

## BACKGROUND

The motions and cross-motions at issue here represent the closing chapters in a class-action lawsuit that was the subject of a bench trial by this court, has since been appealed to the Second Circuit and United States Supreme Court, and is back before this court once again for resolution. A more complete description of the litigation can be found in this court's decision in *N.Y. Nat'l Org. for Women v. Pataki*, 189 F.R.D. 286 (S.D.N.Y.1999) (Carter, J.)

("*NOW III*"), as well as the Second Circuit's subsequent opinion in *N.Y. Nat'l Org. for Women v. Pataki*, 261 F.3d 156 (2d Cir.2001) ("*NOW IV*"). *See also N.Y. Nat'l Org. for Women v. Cuomo*, 14 F.Supp.2d 424 (S.D.N.Y.1998) (Carter, J.) ("*NOW II*"); *N.Y. Nat'l Org. for Women v. Cuomo*, 182 F.R.D. 30 (S.D.N.Y.1998) (Carter, J.) ("*NOW I*"). However, a simplified review of the relevant legal and factual history is nonetheless appropriate.

*The Suit*

The underlying suit is a 42 U.S.C. § 1983 class action brought by the New York State, New York City, and Westchester County chapters of the National Organization for Women (collectively, "NOW"), as well as four individual plaintiff-intervenors, seeking monetary, injunctive, and declaratory relief. *NOW IV*, 261 F.3d at 159. From the outset, plaintiffs basic challenge has been to the administrative practices and procedures of the New York State Division of Human Rights (the "Division"), the state agency responsible for handling and processing of claims of housing and employment discrimination. *NOW III*, 189 F.R.D. at 291. Over time, the litigation came to comprise three main allegations. The first and foremost was that protracted delays in the Division's handling of certain class members' claims violated Fourteenth Amendment rights to procedural due process and equal protection. *Id.* at 291, 308, 311–12. The second was that certain notice deficiencies preceding the administrative convenience dismissal ("ACD") of some class members' claims violated procedural due process. *Id.* at 311. The third and final was that the institution of particular intake rules (the "1995 Intake Rules"),[1] which autho-

---

**1.** The 1995 Intake Rules are 9 N.Y.C.R.R. §§ 465.1(*l*) & 465.3(c)(6). The former requires that a complainant provide the Division with "information sufficient to indicate that the [complainant] filing such verified document has been aggrieved by an unlawful discriminatory practice and has actual knowl-

edge of the facts alleged." The latter provides that the Division can reject a complaint when the intake worker believes the complaint is based on "mere speculation," "contradicts an inference of discrimination" or is "unbelieva-

rized Division personnel to refuse arbitrarily to accept the filing of valid discrimination complaints, offended procedural due process and the Supremacy Clause. *Id.* at 291, 312–14.

*The 1995 Intake Rules*

In 1998, this court granted plaintiffs' request for a preliminary injunction barring implementation of the 1995 Intake Rules because plaintiffs established they were likely to prevail on their claim that the rules violated the procedural due process rights of NOW's members by randomly barring individuals from filing valid complaints with the Division. *NOW I*, 182 F.R.D. at 42; *see also NOW III*, 189 F.R.D. at 312. In 1999, following a bench trial, this court issued an opinion finding, among other things, that the preliminary injunction should be converted into a permanent one prohibiting the Division from ever resuming use of the 1995 Intake Rules. *NOW III*, 189 F.R.D. at 312–14. The court noted that NOW had presented clear evidence at trial showing "that the [1995] Intake Rules had great impact, and potentially deprived large numbers of persons of their discrimination complaints without cause." *Id.* at 313. The court further concluded that there was ample proof of continuing harm, observing that "Division officials' behavior during the course of this lawsuit suggests that there is an impending threat that defendant or his successor might later reimplement the 1995 Intake Rules." *Id.* at 313–14.

*Processing Delays and Notice Deficiencies*

In addition to ruling that the 1995 Intake Rules should be permanently enjoined, the court also considered plaintiffs' two other main contentions relating to protracted delays in the processing of class members' complaints, and notice deficiencies in the Division's contact procedures for complaints at risk of being ACD'ed.

In terms of the latter, the court found that "the balance of evidence favor[ed] plaintiffs' claims, and that the Division's ACD complainant contact procedures and its Post 1991 ACD letter violated [certain class members'] due process rights." *Id.* at 311. In regard to the former, the court found that plaintiffs had clearly demonstrated that the Division's processing delays severely compromised the evidentiary basis of certain class members' claims, thereby causing them actual prejudice. *Id.* at 308. The court acknowledged that some delay was inevitable, but concluded that the prejudice created by the Division's delays—which typically exceeded three years—nonetheless violated due process by depriving complainants of the property interest in their valid discrimination claims. *Id.* at 310. However, the court rejected plaintiffs' related equal protection challenge to the processing delays, concluding that the Division procedure responsible "survives the rational basis test." *Id.* at 311–12.

*Injunctive Relief*

In response to the three categories of harms described above, the court formulated a broad injunction prohibiting the Division from taking "any action in violation of plaintiffs' Fourteenth Amendment due process rights." *Id.* at 314. More specifically, the court ordered defendants to work with plaintiffs to formulate a "Joint Remedial Plan" designed to ameliorate prejudicial processing delays of more than three years. *Id.* at 314–15. Additionally, the court ordered defendants to refrain from implementing the 1995 Intake Rules, officially transforming the preliminary injunction granted in *NOW I* into a permanent one. *Id.* at 312–14, 315. Finally, the court ordered defendants to reform their contact procedures in a number of specific ways to provide better notice to complainants at

ble on its face." *NOW III,* 189 F.R.D. at 312 n. 15.

risk for having their claims ACD'ed. *Id.* at 315. Of particular relevance, as part of this notice relief, the court enjoined further use of the "ACD notification letter in circulation after April 11, 1999, because that letter provides insufficient notice to complainants that they are at risk for ACD . . . ." *Id.*

On November 24, 1999, defendants filed notice of their appeal of this court's grant of declaratory, injunctive, and monetary relief in *NOW III.* On November 30, 1999, NOW filed notice of a cross-appeal of that same relief to the extent that it did not go far enough in vindicating class members' due process claims. Over the next few months, the parties filed various motions and cross-motions of little consequence to this opinion. Then, on June 4, 2000, class member Abby Oshinsky ("Oshinsky") filed a motion with this court seeking an order requiring that defendants vacate the ACD of two human rights claims she had filed against her former employer, the New York City Housing Authority ("NYCHA"). She further requested that the order require defendants to restore her complaints to the Division's hearing calendar and accord them the highest scheduling priority. (Mem. of Law of Pl. Class Member Abby Oshinsky at 1.) On July 9, 2001, defendants filed a motion opposing Oshinsky's requested relief; and, on July 13, 2001, NYCHA filed a motion to intervene in this litigation and oppose Oshinsky's motion. Her motion, along with NYCHA's to intervene, remain pending before this court.

*The Second Circuit Rules*

On June 23, 2001, the nature of this litigation changed dramatically when the Second Circuit announced its decision vacating the orders entered by this court in *NOW III,* and dismissing plaintiffs' due process claims with prejudice. *NOW IV,* 261 F.3d at 172–73. In its opinion, the Second Circuit expressed "deep reservations" as to this court's conclusion that such delay coupled with actual prejudice constitutes a procedural due process deprivation. *Id.* at 166–67. However, the panel took care to clarify that no definitive holding was made on that point, which was not critical to disposition of the case. *Id.; see also id.* at 173 (Calabresi, J., concurring). Instead, the delay question turned on the availability of certain procedures under New York law that could have allowed class members aggrieved by unreasonable delays to obtain writs of mandamus compelling the Division to act on their claims. *Id.* at 168–69 (citing state and federal precedents). Given these Article 78 procedures, which could have been utilized before delays became prejudicial (i.e., predeprivation), the Second Circuit concluded that New York had afforded the class members in question "all of the process they are due under the Fourteenth Amendment of the Federal Constitution." *Id.* at 168 (citations omitted).

The Second Circuit also rejected this court's finding that defendants violated due process by providing inadequate notice to complainants at risk for having their claims ACD'ed. Noting that plaintiffs had mounted a facial challenge to the Division's contact policy, the Second Circuit concluded that plaintiffs had not met their "heavy burden" of demonstrating that "the Policy could never be applied in a manner that would afford claimants constitutionally adequate notice." *Id.* at 171 (quotations omitted). Of particular relevance, the Second Circuit rejected this court's determination that the Division's post–1991 ACD letters violated due process by failing to notify complainants clearly that they should contact the Division in order to avoid dismissal. *Id.* at 172 (citing *NOW III,* 189 F.R.D. at 309). This court apparently erred by focusing solely upon the notice provided in the letters, and failed to consider that Division policy also required that attempts be made to contact com-

plainants by telephone before their claims could be ACD'ed. *Id.*

*Plaintiffs' Cross–Appeal*

Finally, in its opinion, the Second Circuit also rejected plaintiffs' cross-appeal without comment. As suggested previously, the general thrust of the cross-appeal was that this court's grant of relief in *NOW III* had not gone far enough. Plaintiffs apparently sought a remand to this court, ideally with a directive to enter still further injunctive relief. Of particular relevance, plaintiffs cross-appealed "from so much of the order which ... b) failed to provide complete notice relief to those plaintiffs whose complaints were illegally rejected under [the 1995 Intake Rules]." (Pls.' Mem. of Law in Opp'n to Defs.' Cross–Motion and in Reply to Defs.' Opp'n to Pls.' Motion for Notice Relief at 6 (quoting Appeal Br. for Pls., Point VIII, at 67–68).) In rejecting plaintiffs' cross-appeal, the Second Circuit stated simply: "We have carefully considered plaintiffs' cross-appeal and find it without merit." *NOW IV,* 261 F.3d at 173. No mention was made of the relationship between plaintiffs' request for more comprehensive notice relief and this court's grant of an injunction against the 1995 Intake Rules. In fact, the Second Circuit's decision made no specific reference at all to the latter permanent injunction.

Following the Second Circuit's ruling in *NOW IV,* plaintiffs sought unsuccessfully to obtain both a rehearing and rehearing en banc. Despite these appellate defeats, plaintiffs filed a motion with this court, on August 17, 2001, seeking "curative notice relief" virtually identical to that which the Second Circuit had rejected without comment as part of plaintiffs' cross-appeal in *NOW IV. (See* Pls.-Intervenors' Mem. in Supp. of Notice Relief at 2.) On September 24, 2001, the Second Circuit issued its mandate officially vacating this court's prior orders and dismissing plaintiffs' due

process claims with prejudice. On October 12, 2002, defendants submitted a cross-motion to this court, seeking dismissal of plaintiffs' action in its entirety, and opposing plaintiffs' request for curative notice relief. (Defs.' Mem. of Law in Supp. of Their Cross–Motion to Dismiss and in Opp'n to NOW's Application for Post–Appeal Injunctive Relief at 2.) Shortly thereafter, plaintiffs' final avenue of appellate review was foreclosed when the United States Supreme Court declined to grant certiorari in this case, bringing events to where they are now. *N.Y. Nat'l Org. for Women v. Pataki,* 534 U.S. 1128, 122 S.Ct. 1066, 151 L.Ed.2d 969 (2002).

## DISCUSSION

Still outstanding are plaintiffs' motion for curative-notice relief, Oshinsky's motion to have her two claims reinstated by the Division, NYCHA's motion to intervene and oppose Oshinsky's request, and defendants' cross-motion to dismiss plaintiffs' cause of action in its entirety. The last of these, of course, takes logical priority since it would, if granted, extinguish any basis for providing either plaintiffs or Oshinsky their requested relief, which would, in turn, make NYCHA's motion moot as well.

*Cross–Motion to Dismiss*

■ The basic thrust of defendants' cross-motion is that the Second Circuit's opinion and mandate, taken together, manifest a design to dismiss *all* of plaintiffs' due process claims and vacate *all* of this court's injunctive relief, including that related to the 1995 Intake Rules. (Defs.' Mem. of Law in Supp. of Their Cross–Motion to Dismiss and in Opp'n to NOW's Application for Post–Appeal Injunctive Relief at 2.) Plaintiffs, by contrast, understand the Second Circuit as having intended merely to reverse those orders that were before it on appeal, which this court's

rulings regarding the 1995 Intake Rules clearly were not. (Pls.' Mem. of Law in Opp'n to Defs.' Cross–Motion and in Reply to Defs.' Opp'n to Pls.' Motion for Notice Relief at 2–3.)

Defendants' broad reading has a certain plausibility in that the language of the Second Circuit's opinion and mandate is quite categorical. The decision places no qualifications on the panel's conclusion that "[b]ecause we find that no procedural due process violations are presented, we vacate the district court's ... award of injunctive and declaratory relief, and dismiss plaintiffs' procedural due process claims." *NOW IV*, 261 F.3d at 160. And the mandate states simply that "the orders of said district court are VACATED and the plaintiff's procedural due process claims are DISMISSED with prejudice...." (Duffy Aff., Ex. A.) There are, however, several reasons to think that such an interpretation is overbroad.

To begin with, as plaintiffs point out, defendants apparently never even appealed this court's grant of a permanent injunction against the 1995 Intake Rules. (*See* Pls.' Mem. of Law in Opp'n to Defs.' Cross–Motion and in Reply to Defs.' Opp'n to Pls.' Motion for Notice Relief at 3 (quoting Br. for Defs.–Appellants–Cross–Appellees at 20, 20 n. 7) ("The district court also permanently enjoined the implementation of defendants' 1995 Intake Rules.... Defendants do not appeal from this portion of the district court's order.").) This calls into question any claim that the Second Circuit's ruling was meant to encompass this court's grant of declaratory and injunctive relief regarding the 1995 Intake Rules as well.

Compounding this court's skepticism is its recognition that the particular due process violations caused by 1995 Intake Rules were completely distinct from those resulting from either the processing delays, or the ACD notice-deficiencies.

*Compare NOW III*, 189 F.R.D. at 305–11 (discussing the processing delays and ACD notice deficiencies), *with id.* at 312–15 (analyzing the 1995 Intake Rules). Indeed, as suggested previously, the Second Circuit's opinion made no specific mention whatsoever of either this court's analysis of the 1995 Intake Rules, or its grant of injunctive relief against the same. This is in marked contrast to that opinion's extensive discussion and detailed review of this court's findings that the Division's processing delays and deficient ACD notice-policy both violated due process. *NOW IV*, 261 F.3d at 161–64, 166–73. All of this strongly suggests that the relief relating to the 1995 Intake Rules remains in effect because it was not an issue on appeal.

Finally, on this question of whether the declaratory and injunctive relief entered against the 1995 Intake Rules survives *NOW IV*, the court notes that the Second Circuit's holding regarding processing delays is clearly inapplicable to the 1995 Intake Rules. Integral to the panel's determination that the delays did not offend due process was its finding that Article 78 offered an alternative *pre*-deprivation remedy to aggrieved individuals. *Id.* at 168 n. 3. This finding was key because the availability of alternative state remedies is not necessarily a defense when those remedies are available only *post*-deprivation. In that latter context, the existence of other remedies is, as the Second Circuit acknowledged, relevant "only when the deprivation at issue was 'random and unauthorized.'" *Id.* (quoting *Alexandre v. Cortes*, 140 F.3d 406, 411 (2d Cir.1998)).

Unlike the processing delays, of course, the particular due process violations caused by the 1995 Intake Rules could not have been remedied *pre*-deprivation. These rules empowered Division personnel to arbitrarily bar complainants from ever even filing their discrimination complaints

with the Division. Such violations could not be prevented by an Article 78 proceeding, only cured after the fact. What is more, the 1995 Intake Rules were in no way "random and unauthorized." Quite the contrary, they were "established state procedures," rendering the availability of alternative post-deprivation remedies irrelevant. *Alexandre,* 140 F.3d at 411 ("[T]he existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures."). It seems fairly clear, therefore, that the permanent injunction against the 1995 Intake Rules remains in effect, making complete dismissal of plaintiffs' cause of action inappropriate.

*Curative Notice Relief*

■ Of course, nothing in the foregoing analysis means that plaintiffs are necessarily entitled to have their motion for curative notice relief granted. Indeed, the court has serious reservations about the propriety of such a remedy, particularly in light of the Second Circuit's outright rejection of plaintiffs' request for substantially the same relief as part of its cross-appeal. *NOW IV,* 261 F.3d at 173. Plaintiffs have a point that the Second Circuit may not, in fact, have had jurisdiction over the cross-appeal insofar as the question of curative notice relief was concerned. (Pls.-Intervenors' Mem. in Supp. of Notice Relief at 4–5.) Such an argument, however, is beside the point. Regardless of whether it had jurisdiction, the Second Circuit has clearly expressed its stance on the subject. And even if this court were not formally bound by that determination, defendants would simply appeal any contrary ruling to the very same panel that deemed plaintiffs' cross-appeal to be without merit. *See NOW IV,* 261 F.3d at 173 ("The present panel will retain jurisdiction over any further appeals that may arise in this case.").

What is more, even though plaintiffs' cross-appeal was ostensibly rejected without comment, the Second Circuit has already offered some indirect hints as to why such curative-notice relief would be inappropriate. For example, in disagreeing that plaintiffs were entitled to ACD notice-relief, the Second Circuit noted that plaintiffs had not met their heavy burden of showing that the Division's ACD contact-policy could never be applied in a manner that provided adequate notice. *Id.* at 171. Also of relevance, the Second Circuit also criticized this court for focusing exclusively on the ambiguous wording of the post–1991 ACD letters—wording quite similar to that which plaintiffs deem deficient in their current motion. *See id.* at 172.

These two insights suggest possible reasons why plaintiffs are not entitled to the curative notice relief they seek. For one thing, plaintiffs have not shown that the Division's procedures for notifying those individuals whose claims were improperly rejected pursuant to the 1995 Intake Rules could never be applied in a way that gave adequate notice. For another, plaintiffs have framed their criticisms of this notice policy too narrowly, focusing exclusively on the language of the letter sent to those adversely affected by the 1995 Intake rules, thereby failing to demonstrate that the policy as a whole is flawed. These burdens are heavy, but as both this court and the Second Circuit have repeatedly emphasized, that is the price of bringing a facial challenge. As a result, even though the injunction against the 1995 Intake Rules remains in effect, plaintiffs' motion for curative notice relief must still be denied.

*Oshinsky's Motion*

This brings the discussion to Oshinsky's motion to have her claims of harassment and sex discrimination reinstated, as well

as NYCHA's motion to intervene and oppose the same. Oshinsky's story is indeed a sad one, and her grievances are certainly worthy of redress. Unfortunately, all that remains of this case is the court's entry of declaratory and injunctive relief relating to the 1995 Intake Rules, which has absolutely nothing to do with Oshinsky's plight. As a result, this case is no longer an appropriate vehicle for vindicating her claims, however meritorious they may be. Her motion is therefore dismissed, which makes NYCHA's moot and thus subject to dismissal as well.

### CONCLUSION

To summarize, defendants' motion for dismissal of the complaint in its entirety is denied. Complete dismissal is inappropriate because this court's determinations regarding the 1995 Intake Rules were neither appealed to, nor reviewed by, the Second Circuit, leaving that lone aspect of the case intact. Plaintiffs' motion for curative notice relief is also denied. The Second Circuit has already declared their request to be without merit, presumably for the reasons identified in this opinion. Finally, both Oshinsky's motion to have her claims reinstated, as well as NYCHA's motion to intervene and oppose are denied. In the aftermath of the Second Circuit's decision and mandate, this court retains jurisdiction over issues arising out of the permanent injunction against the 1995 Intake Rules, but nothing else.

IT IS SO ORDERED.